UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 5:20-CR-50122 |
| Plaintiff | MOTION TO DISMISS AND FOR |
| v. | ALTERNATIVE RELIEF |
| KIMBERLEE PITAWANAKWAT | |
| Defendant | |

Kimberlee Pitawanakwat
26214 Foster Road
Monroe, OR 97456
kimberlee.pitankwt@gmail.com

The Honorable Veronica L. Duffy
United States Magistrate Judge
400 S. Phillips Avenue Room 119
Sioux Falls, SD 57104.

Re: Motion To Dismiss And For Alternate Relief for the following reasons:

I, Kimberlee Pitawanakwat, the Defendant in the above captioned case, respectfully moves this Honorable

Court for Dismissal of the Pending Indictment and For Alternative Relief for the following reasons:

**A. BACKGROUND OF THE CASE**

1. Defendant's Motion to Proceed Pro Se was granted on June 5, 2023. Until that time Defendant

was forced to rely upon incompetent Court Appointed attorneys. An example of the incompetence of these

attorneys can be seen from Defendant's pro se Motion for CJA Expert Funds to retain John Nixon.

Defendants former counsel, Frank Driscoll (and current standby counsel appointed over Defendant's objection), violated his obligation to maintain client confidentiality and filed a lengthy letter attacking Defendant and falsely making all kinds of claims about the evidence, witnesses, and other crucial facts about this case.  Mr. Driscoll informed the court that there is no evidence that can be tested and only one defense witness and that Defendant had not informed him of others.  That statement was not true, as can be seen from Defendant's five-page letter to Mr. Driscoll outlining the many things necessary to prepare my case for trial.  None of these steps were taken and the Magistrate Judge formerly assigned to my case, improperly accused me of using abusive or delaying tactics, when the truth is that Defendant has been pushing her former counsel to work hard to prepare her case for trial, but they failed in every regard. Magistrate Wollmann tacitly admitted that the record supported her recusal from the case by unilaterally ordering her own recusal, yet Defendant's Motion that apparently caused Judge Wollmann's recusal has been withheld from the public record, even though Defendant did not request the Motion be filed ex. parte.  Court proceedings are supposed to be public proceedings. Defendant respectfully moves this Court to require that all publicly filed documents are appropriately filed in the ECF record of this case, since such records are essential for any appeal, should that be necessary.

2. Defendant is charged with two counts of the five-count case Indictment.  Count IV alleges that Defendant made a false statement to former tribal investigator Puckett and Count V alleges that Defendant is an Accessory after the Fact.  In relation to Count V my former attorney, Johnathan McCoy, told me that AUSA Heather Sazama admitted to him that she has no factual basis for this charge.  My belief is that it was presented to the Grand Jury in order to falsely establish jurisdiction.  I have been provided no information about what was provided to the Grand Jury in the case to support either charge.

3. What I do know is that witnesses at the house that night saw no shooting and that George Dull Knife was not present at the house and I knew he had not been present at the house for a few days.  I am quite willing to put these statements in Declaration form because they are the truth.  I have consistently told the truth about this case from the beginning and been consistently mistreated by a system that appears to protect wrongdoers and punishes the innocent. The Government's own witnesses support exactly what

I have said from the beginning.  Alleged victims Carmen and KT Burgee first called the police from a location several miles from the Dull Knife residence.  The Burgee's originally said (I am paraphrasing here) that someone they could not see had fired at them numerous times from a ditch (so clearly it was not at the Dull Knife property), and they could not see who it was.  Both Burgees also said that George Dull Knife was not at the Dull Knife residence and that they spoke to Defendant and Waskoness Pitawanakwat.  The first statements of Carmen and KT Burgee were both consistent but after Carmen Burgee spoke to FBI Agent Seymour her statement changed and she named George Dull Knife, however she had never actually met George Dull Knife so was not capable of identifying him.  Lieutenant Klesh was the first responding officer at the Dull Knife residence.  He immediately reported back to police dispatch that there had been no shooting at the Dull Knife residence. My daughter Waskoness Pitawanakwat was interviewed extensively by law enforcement including tribal police and the FBI and said the same things, that George Dull Knife was not at the property and that there had been no shooting there.

4. The Government's only evidence that Defendant has been made aware of to support Count V is the statement of Ian Dull Knife, made at the Kyle jail on or around September 17, 2020, to former tribal investigator Puckett. Statements of jailhouse informants are inherently suspect.  In violation of Federal Rules of Criminal Procedure 16, Defendant has been provided no criminal history information about Ian Dull Knife, or whether he was a paid informant for former officer Puckett, or any police reports about his criminal history, or whether he was released from jail by Puckett in exchange for his false information. Defendant understands that Ian Dull Knife is a registered sex offender and heard that he was in jail for allegedly pistol whipping someone with a purple colored .45 caliber handgun. I am aware of this information because I overheard tribal COVID border patrol employees discussing it at a reservation check point. I assume that there is considerable information in Government files relating to Ian Dull Knife, but I have been provided with no information.  I wrote to AUSA Heather Sazama on June 14, again requesting this information, as well as raising other matters, but have received no response. I understand that letter was only emailed to her yesterday, but I need her response in relation to current deadlines for

filing pretrial motions, which are currently due tomorrow. See Defendants Exhibit A to this Motion, Defendants Letter to Heather Sazama dated June 14, 2023.

    5. I should note that my understanding that one of the alleged victims in this case, K.T. Burgee was convicted of sexual assault that the Eighth Circuit Court of Appeals describes as follows in *United States v. KT Burgee*, 988 F. 3d 1054 (8th Cir. 2021), at 1057:

> "The government submitted video of the minor victim's forensic interview, which was recorded three days after Burgee committed the offending acts. In her interview, the 14-year-old girl recounted how Burgee attended her mother's party. During the party, she was sleeping in bed with her little sister. She awakened with Burgee beside her and kissing her face. Burgee took off her clothes and raped her. She recalled feeling fluid coming out of her vagina afterwards. The district court also heard evidence from a nurse practitioner who evaluated the 14-year-old girl twice within two and a half weeks of the underlying conduct. The nurse practitioner found that the girl's injuries were consistent with rape…"

I have been provided no information in discovery about Mr. Burgee's criminal history, police reports about his extensive criminal history, or any information about his conviction for failing to register as a sex offender, which was the issue in the Eighth Circuit case referenced above. I understand that Carmen Burgee may have been investigated or charged for aiding and abetting KT Burgee in relation to some of this criminal activity, but I have been unable to locate that information.  My understanding and reading of the rules are that it is AUSA Heather Sazama's obligation to provide such information to me, as part of Rule 16 discovery, or as *Brady*, or pursuant to her obligations as a prosecutor, member of the South Dakota State Bar, and pursuant to the United States Attorney Manual (USAM) and based upon her obligation to act in the interests of Justice. However, for reasons I do not understand, none of this information has been provided and the Judges previously assigned to this case failed to require that the Government complies with its obligations. I have received several notifications in the docket and various Court Orders that the Government is required to comply with the Due Process Protections Act (DPPA), See: https://www.fd.org/sites/default/files/news/bills-116s1380enr.pdf. The DPPA requires the

Government to disclose favorable defense evidence in a "**timely manner**" and additionally warns that failure to provide such evidence may result in consequences, including but not limited to exclusion of evidence, adverse jury instructions, dismissal of charges, contempt of court proceedings, disciplinary action, or sanctions by the Court.  I respectfully move this Court Order the Government to produce any and all of such information immediately and if the Government has violated the DPPA then order dismissal of the case, and or additional remedies.

6. During his recorded statement Ian Dull Knife indicates that he was present at the Dull Knife property with George Dull Knife and others. Ian Dull Knife says that he saw George Dull Knife shoot at the Burgee vehicle numerous times with an AR15 rifle and then hand the AR15 rifle to me. This statement is false and is entirely inconsistent with what Lieutenant Klesh found when he arrived at the Dull Knife house.  It is obviously crucial for the Defense to test the spent bloodstained bullet located in the alleged victim's car and see whether it came from another weapon.  Yet, the former Court appointed defense counsel and AUSA Sazama and the previous Judges assigned to this case have repeatedly disregarded this request for testing.

7. Former Tribal Criminal Investigator Puckett is not a federal agent, or Bureau of Indian Affairs Officer and is therefore not a federal agent within the meaning of 18 USC § 1001.  In fact, Chief U.S. District Judge Roberto Lange has found in *Oglala Sioux Tribe v. United States et. al*., 5:22-CV-O5066-RAL in his 78-page order for a preliminary injunction: "that while the government's treaty-based duties may not be as broad as the tribe asserts, they are also not "nonexistent." The U.S. "has a duty of protection, cooperation, and support of the Tribe's law enforcement, and the defendants may neither abandon altogether funding and support of the Tribe's law enforcement," See:

https://www.courthousenews.com/wp-content/uploads/2023/05/Pine-Ridge-Law-Enforcement-Order.pdf.
In violation of its Treaty Obligations, The United States has failed to provide federal law enforcement agents and instead allowed the use of allegedly corrupt tribal police such as former investigator Puckett. Upon information and belief former investigator Puckett is no longer a tribal police officer.  Defendant was informed confidentially that Puckett was suspended for misconduct involving wrongfully charging

multiple individuals. Defendant personally saw a screenshot of Mr. Puckett's personal Facebook page where he told someone that he is no longer an officer with the tribal police department.

8. Previous Judges assigned to this case have also refused to supervise this process in any way to assist the Defendant in establishing the truth.  The previously assigned Judges failed to apply the Presumption of Innocence to this Defendant but instead treated the Defendant as barely human, forcing Defendant to travel over 4000 miles for a 20-minute hearing that could have happened by video.  During that hearing Defendant requested permission to file documents using the ECF system but rather than allowing an oral motion the Court required a written Motion to be filed, causing yet further delay and more communication with Defendant's standby counsel who refuses to communicate via email.

9. This Court must be aware that it is obviously trying to make it as difficult as possible for Defendant to represent herself and use the basic systems to file documents that Defendant has prepared. This means that Defendant's compliance with the current case deadlines is essentially impossible. The current trial and motion schedule was set by the Trial Judge who is no longer assigned to my case, yet I have been granted no continuance and am expected to learn how to file electronically (a 125-page booklet), the local rules (another 22 pages), the CJA E-voucher system (unknown how many rules that involves) and am ordered to learn the Federal Rules of Criminal Procedure. I will do the best I can to learn all these rules and comply with this deadline by tomorrow, but it is unjust to expect the Defendant to prepare many complicated motions in a few days and learn all the rules and procedures necessary that take lawyers years to understand. I had repeatedly requested the assistance of competent counsel but was denied such assistance at every turn.


**B. FAILURE TO STATE AN EVIDENTIARY BASIS FOR COUNT V**

10. Defendant understands that the Government has no factual evidence supporting the Accessory After the Fact charge. Former counsel Jonathan McCoy told Defendant that AUSA Sazama admitted that this was true in a phone conversation.  Defendant seeks additional time to obtain more information from Mr. McCoy by Federal Subpoena (Fed. Rule Crim Procedure 17(c)) and leave to supplement this pleading

with legal authorities regarding the Major Crimes Act and raise further arguments in relation to subject matter jurisdiction.

**C. WITHOUT AN EVIDENTIARY BASIS FOR COUNT V JURISDICTION IS LACKING FOR A CHARGE UNDER THE MAJOR CRIMES ACT FOR AN ALLEGED VIOLATION OF 18 USC § 1001.**

11. If Defendant is correct that there is no factual basis for Count V and that Heather Sazama made that admission to Mr. McCoy then there is no basis for Subject Matter Jurisdiction pursuant to the Major Crimes Act. Defendant seeks additional time to obtain more information and supplement this pleading with additional evidence and legal authorities.

**D. THERE IS NO EVIDENCE FORMER CI PUCKETT WAS A FEDERAL LAW ENFORCEMENT OFFICIAL.  ALTERNATIVELY, IF HE WAS A "FEDERAL" AGENT HE WAS ACTING ULTRA VIRES.**

12. The Government is required to provide evidence that former CI Puckett was a federal agent within the meaning of 18 USC § 1001.  No such evidence has been provided. Defendant seeks additional time to obtain more evidence and supplement this pleading with additional legal authorities.

**E.  THE GOVERNMENTS OWN WITNESSES CONCEDE NO SHOOTING TOOK PLACE AT THE DULL KNIFE RESIDENCE.**

13. See extensive statement of factual background above.

14. Defendant seeks additional time to obtain more evidence and supplement this pleading with additional legal authorities.

**F. THE GOVERNMENT HAS FAILED IN ITS CONSTITUTIONAL OBLIGATIONS TO PROVIDE BRADY INFORMATION THAT WOULD LIKELY CAUSE DISMISSAL OF THIS**

**CASE. UPON INFORMATION AND BELIEF FORMER CI PUCKETT IS A CORRUPT OFFICER AND HIS CORRUPTION IS BEING PROTECTED FROM BRADY DISCLOSURE.**

15. See extensive statement of factual background above.

16. Defendant seeks additional time to obtain more evidence and supplement this pleading with additional legal authorities.

**G. THE GOVERNMENT IS IN VIOLATION OF ITS OBLIGATIONS UNDER THE TREATY OF FORT LARAMIE OF 1868 AND OTHER TREATIES**

17. The Oglala Sioux Tribe is currently in litigation with the Government in *Oglala Sioux Tribe, a Federally Recognized Tribe v. United States of America et. al.* 5:22-CV-05066-RAL. A preliminary injunction in favor of the Oglala Sioux Tribe has already been issued. Defendant seeks additional time to obtain more evidence and supplement this pleading with additional legal authorities. Defendant is consulting with a professor of Native American law to obtain additional information about how Treaty law and Subject Matter Jurisdiction applies in this case. Chief Judge Lange issued a preliminary injunction finding that the Government is in violation of its obligation to provide Federal Law enforcement assistance on the Pine Ridge Reservation.

18. Treaty of Fort Laramie (1868) together with other applicable Treaties (hereinafter Treaty or Treaties) in Article I requires the following:

ARTICLE I.

"From this day forward all war between the parties to this agreement shall for ever cease. The government of the United States desires peace, and its honor is hereby pledged to keep it. The Indians desire peace, and they now pledge their honor to maintain it."

"If bad men among the whites, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will, upon proof made to the agent, and forwarded to the Commissioner of Indian Affairs at

Washington city, proceed at once to cause the offender to be arrested and punished according to the laws of the United States, and also reimburse the injured person for the loss sustained…"

"If bad men among the Indians shall commit a wrong or depredation upon the person or property of nay one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent, and notice by him, deliver up the wrongdoer to the United States, to be tried and punished according to its laws, and, in case they willfully refuse so to do, the person injured shall be reimbursed for his loss from the annuities, or other moneys due or to become due to them under this or other treaties made with the United States; and the President, on advising with the Commissioner of Indian Affairs, shall prescribe such rules and regulations for ascertaining damages under the provisions of this article as in his judgment may be proper, but no one sustaining loss while violating the provisions of this treaty, or the laws of the United States, shall be reimbursed therefor."

19. Upon information and belief, Defendants case involves both "bad men among the whites" and "bad men among the Indians" that implicate my rights pursuant to these Treaties and I need additional time to understand and research applicable remedies available to me under Treaty law.  Defendant notes that because of this case and on the Pine Ridge Reservation Defendant had two pregnant mares killed and another four horses stolen, all seven saddles stolen, and all my horse tack, vet supplies, two horse trailers, two Mongolian yurts, two fireplaces, a mobile hut with fireplace, a pickup truck and almost three years of my life and my children's lives.  The Defendant provided all this information to her former counsel, Jonathan McCoy, who said he would look into it (I was unable to file a police report from Oregon), but Mr. McCoy failed to respond to me or take any additional action.

**H. PREVIOUS COURT ACTIONS AGAINST DEFENDANT HAVE BEEN PREJUDICED, UNJUST AND LIKELY ARE FOUNDED UPON RACIST ACTIVITY**

20. The historical precedents regarding atrocities against Native Americans are clear. On July 4, 1776, the United States of America was founded with the Declaration of Independence, which openly stated that "He (the British King) has excited domestic insurrections amongst us and has endeavored to bring on the inhabitants of our frontiers, the merciless Indian Savages", and slandered Native Americans as "the merciless Indian Savages".

21. The U.S. government and leaders treated Native Americans with a belief in white superiority and supremacy, set out to annihilate the Indians and attempted to eradicate the race through "cultural genocide".

22. During the American War of Independence (1775-1783), the Second War of Independence (1812-1815) and the Civil War (1861-1865), the U.S. leaders, eager to transform its plantation economy as an adjunct to European colonialism and to expand their territories, coveted the vast Indian lands and launched thousands of attacks on Indian tribes, slaughtering Indian chiefs, soldiers and even civilians, and taking Indian lands for themselves.

23. In 1862, the United States enacted the Homestead Act, which provided that every American citizen above the age of 21, with a mere registration fee of 10 U.S. dollars, could acquire no more than 160 acres (about 64.75 hectares) of land in the west. Lured by the land, the white people swarmed into the Indian areas and started a massacre that resulted in the death of thousands of Indians.

24. Leaders of the U.S. government at that time openly claimed that Indians must be annihilated or driven to places that no one would go, that Indians had to be wiped out swiftly, and that only dead Indians are good Indians. American soldiers saw the slaughter of Indians as natural, even an honor, and would not rest until they were all killed. Similar hate rhetoric and atrocities abound and are well documented in many Native American extermination monographs.

25. The Background of This Case section above provides specific examples of how this same racist and biased approach has been applied to Defendant. It is best summarized by examination of Defendants Pro Se Motion To Vacate Order As Moot Or In The Alternative To Appear By Video (Docket No. 220). This pleading does not appear in the public record PACER system but instead is treated as an

Ex-Parte pleading even though Defendant did not request it to be filed Ex-Parte.  Defendant assumes it was filed in this manner in order to avoid embarrassment to Magistrate Judge Wollmann, who recused herself after the filing of this Motion.

## J. DEFENDANT HAS BEEN PLACED UPON ONEROUS CONDITIONS OF RELEASE, PRECLUDING CONTACT WITH HER DAUGHTER FOR OVER TWO YEARS

26. Defendant has been precluded from having any contact with her daughter for over two years even though Defendant has been fully compliant with all conditions of release. The Court could have set much less onerous conditions, such as ordering Defendant to not discuss the case with my daughter, but instead imposed the harshest condition possible even though my daughter had made full statements to tribal and federal investigators.  This unfair treatment is part of a pattern used to try and pressure me into pleading guilty to a crime I did not commit, or to accept a diversion agreement and further evidences a pattern of treating Native Americans as non-humans as clearly documented by the historical records.

## K. THIS COURT SHOULD EXERCISE ITS INHERENT SUPERVISORY AUTHORITY TO DISMISS THIS CASE

27. It is well recognized in Federal law that Courts exercise inherent supervisory jurisdiction over cases before them. Where there are repeated patterns of misconduct, delay, misrepresentations by court appointed counsel, false accusations of delay and abuse by an assigned Judge, the Court should exercise its inherent authority to dismiss the case. In the alternative this Court should Order the Government to provide immediate access to all *Brady / Giglio / Henthorn* material, and missing Rule 16 material under threat of sanction or contempt.

WHEREFORE Defendant prays this Court for its Order Dismissing this Indictment Or For Alternate Relief.

Dated this 15th day of June 2023

Respectfully,

/s/ Kimberlee Pitawanakwat

Kimberlee Pitawanakwat
26214 Foster Road
Monroe, OR 97456
kimberlee.pitankwt@gmail.com

cc: Heather Sazama, Assistant United States Attorney, District of South Dakota, via email:
Heather.Sazama@usdoj.gov