UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>KIMBERLEE PITAWANAKWAT<br><br>Defendant | 5:20-CR-50122<br><br>MOTION TO COMPEL FED. R. CRIM. PRO. 16. DISCOVERY, TIMELY BRADY DISCLOSURE AND FOR ADDITIONAL RELIEF |

Kimberlee Pitawanakwat
26214 Foster Road
Monroe, OR 97456
kimberlee.pitankwt@gmail.com

The Honorable Karen E. Schreier
United States District Judge
400 S. Phillips Avenue Room 223
Sioux Falls, SD 57104.

Re: Defendant Moves this Honorable Court To Compel Fed. Rule Criminal Procedure 16. Discovery, *Brady v. Maryland* disclosure And For Alternate Relief for the following reasons:

**RELEVANT FACTUAL BACKGROUND**

1. Defendant was arrested on September 24th, 2020, in relation to the charges in this indictment. After spending five nights in jail, Defendant was released by the Oregon Magistrate Judge Mustafa T. Kasubhai on September 29th, 2020. The Defendant has been on pretrial release from that date to the present day, a period of about two years and eight months.

2. On October 22, 2021, the Government moved to amend the Defendant's conditions of pretrial release, precluding contact with George Dull Knife and her daughter, Waskoness Pitawanakwat,

and any other potential witnesses. As a result of this order Defendant has not had any contact with her daughter, currently aged 23, for approximately a year and seven months.

3. Defendant has been represented previously by the Federal Public Defenders Office, who conflicted off the representation. The reason for this conflict is believed to be their representation of alleged victim K.T. Burgee in the following case: *United States v. KT Burgee*, 988 F. 3d 1054 (8th Cir. 2021). Defendant was then represented by Mr. Jonathan P. McCoy from November 24, 2020, until December 29, 2022. Defendant has received no information about Mr. Burgee's criminal history from the Government, despite repeated Discovery requests for that information and for the same information about other Government witnesses.

4. During Mr. McCoy's representation he pressured Defendant to accept a plea agreement and was particularly insistent that Defendant accept a diversion which was offered in approximately November 2021. Defendant rejected this offer because it required Defendant to make an admission to the Court that was false, i.e., that Defendant was guilty of some offense when Defendant's position has been consistent from the beginning, that I told former OGT DPS CI Puckett the truth. Eventually I instructed Mr. McCoy in writing, at least by January 21, 2022, to stop discussing plea negotiations with the Government but he continued to try to pressure me to accept a plea agreement.

5. During this entire period Defendant had told Mr. McCoy that she needed to see additional discovery that was required by Fed. Rule Criminal Procedure 16 and I wanted him to Move to Compel disclosure of information pursuant to *Brady v Maryland*, *Giglio* and progeny cases. Mr. McCoy failed to file any such motion.

6. Defendant wrote directly to AUSA Sazama on June 14, 2023, by email raising eleven specific points regarding Rule 16 and Brady issues, as well as requesting the Government's position on providing the spent bloodstained bullet to Mr. John Nixon for testing. Defendants Motion for CJA Funds was approved by the District Court on June 14th, 2023, and by the Eighth Circuit on June 26th, 2023. Defendant has received no response to her letter so is unable to provide any

information to this Court regarding the Government's position on providing the spent bullet to Mr. Nixon for testing, or on missing discovery or any *Brady* disclosure. Defendant informed AUSA Sazama that I would file additional Motions relating to the matters discussed in the letter. Please see Defendants letter to AUSA Sazama, June 14, 2023, Defendants Exhibit A, attached to this Motion.

7. Mr. McCoy was first asked to test the spent bloodstained bullet located in the alleged victim's vehicle in the front passenger footwell in September 2021. Mr. McCoy then had discussions with ballistics expert Mr. John Nixon in October 2021 but failed to ever file any Motion for CJA funds or further explore this issue. Defendant filed her own pro se Motion for CJA Funds on June 14, 2023, together with a sworn declaration from Mr. Nixon. Defendant's Motion was Granted the following day by the District Court and is now approved by the Eighth Circuit.

8. Defendant had consistently raised issues to Mr. McCoy and later to Mr. Frank Driscoll, who was appointed on December 29, 2022, but who failed to file any motions besides continuance motions. Mr. Driscoll is Defendant's current standby counsel. Defendant notes that she had not previously asked for personal access to Discovery and had spent many hours (over 20) at the Federal Public Defenders Office in Portland Oregon conducting supervised Discovery review.

9. On June 5, 2023, Defendant's Motion to Proceed Pro Se was granted. Since that time Defendant has filed timely and appropriate pleadings addressing the issues in her case. As a Pro Se litigant Defendant respectfully moves this Honorable Court for direct access to all discovery, subject to a suitable protective order. Given Defendant's long period of pretrial release without any alleged violations and need to directly access the relevant case discovery to prepare her case for trial. Since Defendant is now pro se this Motion is a reasonable accommodation and an appropriate ground for an exception to the Local Discovery Rule (LR 16.1 DISCOVERY), which allows for a Defendant's direct access to discovery with the Court's permission.

10. I received my first notice pursuant to The Due Process Protections Act (DPPA) on November 18, 2020. That statute provides the following:

> "(1) In general.--In all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law."

11. In the landmark case *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court recognized that, to protect individuals' Constitutional rights to due process and a fair trial, prosecutors must disclose to the defense all known information "favorable to an accused" that is "material either to guilt or punishment." Under *Brady* and its progeny, prosecutors have an affirmative duty to seek out and disclose to the defense all material evidence known to the government that is favorable to the accused. The *Brady* obligation also requires prosecutors to disclose what is known as *Giglio* material—information that can impeach the trial testimony of a government witness—sufficiently timely to permit its effective use by the defense at trial. *Giglio v. United States*, 405 U.S. 150 (1972). These continuing obligations apply to materials that become known to the government, even after trial, and even if the government does not credit them. The suppression of favorable information violates a defendant's right to due process irrespective of prosecutors' good or bad faith and may justify setting aside a conviction.

12. The DPPA provided that each judicial council in which a district court is located shall promulgate a model order for the purpose of paragraph (1). In the case of this District Court the Court requires the disclosure of exculpatory evidence in a "timely manner" and the failure to make such disclosure may result in consequences. Although the required notice is silent as to the meaning of this phrase, it should be interpreted to mean both relatively soon after the Government learns the information and in time for it to be of use to the Defense. This Court had previously provided Defendant the same notice in some Orders issued by the Court in a red bolded box.

13. The Department of Justice (DOJ) has a long history of failure to comply with its *Brady* and *Giglio* obligations. For example, the flawed case against Senator Ted Stevens resulted in an

investigation of *Brady* and *Giglio* violations being ordered by the Honorable Emmet G. Sullivan and a 525-page report by Special Counsel Henry F. Schuelke III. See: http://www.emptywheel.net/wp-content/uploads/2012/03/stevens_report.pdf.

14. Similar findings have been made against the DOJ by the Office of Professional Responsibility in 2016, See: https://www.justice.gov/opr/2016-investigative-summary-1, and in 2020, See: https://www.justice.gov/opr/2020-investigative-summary-7.

15. These consistent and repeated *Brady* and *Giglio* violations have also consistently been treated leniently by the Courts even given the massive power imbalance between Prosecutors and Criminal Defendants. This failure to remedy the problem led to the DPPA being passed with unanimous consent by the Senate, although it was silent as to remedies and left that to the discretion of individual courts.

16. I have received a great many notices that the Government is going to comply with its *Brady* and *Giglio* obligation but have received absolutely no information even though a witness confidentially told Defendant that Puckett was suspended for misconduct involving wrongfully charging multiple people. Later, a different witness said that Puckett was also involved in misconduct in relation to drugs and that he no longer worked for the police department.

**BRADY VIOLATIONS IN THE INSTANT CASE**

17. At the April 9, 2021, Hearing on Defendant's Motion to Suppress Mr. McCoy specifically told me that Mr. Puckett appeared with a lawyer representing him, which indicates that by April 2021 these misconduct issues had already come to light and Puckett had already retained counsel. As this Court is aware, it is extremely unusual for a serving police officer to appear at a hearing on a Motion to Suppress where they have counsel accompany them. I have requested the name of this attorney from my prior counsel and the court personnel at the hearing but have not been provided with this information. This is consistent with a repeated effort to conceal the evidence that this officer is a "Brady" officer who has repeated instances of illegal activity that are hidden from public view to protect prosecutions the officer has been involved in.

18. Later it became clear that Puckett no longer worked for the police department and his public Facebook page indicated that he was attending school for his CDL license. Defendant personally saw a post by Puckett, where he responded to a question from Celestine Stadnick and said that he no longer worked for the police department. Obviously, it is relevant that the primary witness in the Government's case on Count IV is no longer a police officer and for information about why that is the case, if indeed it relates to drug related issues and wrongfully charging multiple people. No documents or evidence about this has been disclosed to the Defendant by the Government.

19. On June 24, 2023, Puckett posted on his public Facebook page that he just completed the South Dakota School Sentinel program on June 23, 2023. The Sentinel program is a mandatory 80-hour training program for "approved school sentinels." A school board may only submit a person for school sentinel training if the person meets ten specific requirements. Item 4 on that list is that the person is "of good moral character." This new information confirms several new pieces of information about former CI Puckett, including that he is no longer a police officer but also that he has been permitted to undertake School Sentinel training and that someone has asserted that he is of good moral character. It is extremely unusual, to say the least, for a serving police officer to leave a police force mid-career and then become a school sentinel. All the training material makes it clear that school sentinels are not law enforcement officers, so it is an obvious demotion and a huge red flag. If, as asserted by Defendant, Puckett is not of good moral character, and this is known to the Government, it should be disclosed to the South Dakota Law Enforcement Training Center and the relevant School Board, since they should be made aware of contrary information that might impact their decision-making process.

**MISSING DISCOVERY**

20. Defendant has repeatedly raised issues with missing discovery or discovery that has been provided in a format that is not viewable. The clearest example is Defendant's repeated request for bodycam and dashcam footage from Officer Isaiah Crow, which I have not been able to view. My position has previously and falsely been presented that I wished personal and unsupervised

    access to this information when what I wanted was to see the dashcam and bodycam Crow footage, which has never been provided in a viewable manner.

21. Because I am now representing myself pro se, I additionally respectfully Move that the Court make this Discovery available to me directly, as discussed in Paragraph 9 above and which is clearly contemplated in the Local Criminal Rules. If that is not possible in this instance, I respectfully continue to request supervised access to the discovery at the Eugene, Oregon, Federal Public Defenders Office.

22. My former co-defendant, George Dull Knife was also presented with discovery in this case. I became aware, through Jonathan McCoy and Mr. Dull Knife's attorney and a Joint Defense Agreement that was then in effect, that Mr. Dull Knife was provided with significantly more discovery than Defendant had been provided. I have received no explanation of what this additional discovery is, but I am entitled to see it pursuant to Rule 16. I was provided with 479 pages of discovery initially and then later I saw discovery numbers that went into the 800's but I was never provided with those numbered documents.

23. My letter to AUSA Sazama details other specific information that is core Rule 16 material, such as statements of my former co-defendant, criminal history information, testing information etc. Please see Defendants Exhibit A, page 2 and 3, none of which has been disclosed to me.

24. In addition to the information provided to Ms. Sazama in Defendant's Exhibit A, this Court should Order the Production of the Grand Jury transcript and other evidence in this case, given the specific issues raised about former CI Puckett, since it is entirely possible that inaccurate information was provided to the Grand Jury in this case in order to obtain an Indictment.

**DUE PROCESS AND EQUAL PROTECTION VIOLATIONS IMPLICATE A RACIST APPROACH TO THIS PROSECUTION**

25. Defendant was indicted on the instant case on November 19, 2020. During this same period the FBI and Department of Justice (DOJ) had become aware of a laptop reportedly belonging to Hunter Biden, the President's son. The laptop was recovered by Grand Jury subpoena in

December 2019. Prior to the contentious 2020 election the public were repeatedly told that the laptop story was likely Russian disinformation. Fifty-One current and former intelligence officials signed a letter with that claim on October 19, 2020.

26. However, contrary to these claims, IRS Supervisory Special Agent Gary Shapley, told a Congressional Committee that the FBI verified that the laptop belongs to Hunter Biden in November or December 2019, at least one year before the story broke in the New York Post. Please see interview of Gary Shapley, Committee on Ways and Means, U.S. House of Representatives, Washington, D.C., May 26, 2023: https://waysandmeans.house.gov/wp-content/uploads/2023/06/Whistleblower-1-Transcript_Redacted.pdf

27. Mr. Shapley, who worked at the tax agency for 14 years, supervised a 12-person team that determined Hunter Biden had failed to pay $2.2 million on $8.3 million in income earned between 2014 and 2019 from foreign countries where his father held sway as vice president, such as China, Romania, and Ukraine.

28. Mr. Shapley and another IRS whistleblower told the House Committee that IRS investigators pressed for felony charges for failing to pay $2.2 million in federal tax, but those charges were blocked by prosecutors and the DOJ. This information is inconsistent with sworn testimony provided by Attorney General Merrick Garland. The extensive revelations provided about Hunter Biden's apparent corrupt dealings and how they may implicate the President himself are beyond the scope of this Motion but are effectively summarized here: https://nypost.com/2023/06/22/irs-whistleblowers-say-doj-covered-up-hunter-biden-tax-fraud/.

29. This Court however does not need to guess about the content of the Hunter Biden laptop because a forensic 644-page report (hereinafter "Laptop Report") has been publicly made available by Marco Polo, a 501(c)(3) organization headed by Mr. Garrett Ziegler. Mr. Ziegler has also made available hard copies of his team's report. The entire report has been made available in pdf form at the following location: https://media.marcopolousa.org/pdf/Report.pdf. The copy of the hard

drive provided to Marco Polo has also been verified by a forensic expert, the CEO of Cyber Forensics, Inc. Konstantinos "Gus" Dimitrelos: see page 5 of the Laptop Report.

30. The Laptop Report details 459 reported violations of federal and state law in stunning detail, according to Mr. Ziegler. One specific criminal act is of note and directly relevant to Defendant's case, and the description of that criminal activity is found at page 466 and 467 of the Laptop Report and is attached to this Motion as Defendant's Exhibit C.

31. Defendant's Exhibit C and the Laptop Report establishes that Hunter Biden committed a federal felony offense on October 12, 2018, when he provided an ATF Form 4473 prior to purchasing a .38 revolver at Ron Palimere's Starquest Shooters and Survival Supply gun shop. On this form Mr. Biden falsely said that he was not a user or addicted to Marijuana, and any depressant, stimulant, narcotic drug, or any other controlled substance. The Laptop Report provides extensive and detailed evidence that this statement was a lie and is essentially identical to the type of alleged crime at issue in Defendant's case. Lying on a federal form to obtain a handgun (which was later found dumped in a garbage can) is clearly a significant criminal charge but was apparently not investigated, considered for prosecution, or even referred to the ATF or Department of Homeland Security. Instead, Mr. Biden is being allowed to plead guilty to one firearm count of unlawful possession of a firearm by a prohibited person. This plea inherently accepts that he is also guilty of several other firearm offenses including lying on the ATF Form 4473. This egregious example of favorable treatment for Mr. Biden can be compared to and contrasted with the approach taken in Defendant's case, where she has been on restrictive supervision for almost three years and prohibited from contact with her daughter. None of these restrictions or prohibitions have been applied in the First Son's case even though the FBI became aware of Hunter Biden's extensive criminality by December 2019.

32. The Laptop Report provides very detailed information about corruption at the highest levels of the United States government, and that which potentially implicate President Biden himself, yet the DOJ quashed every attempt to conduct an impartial investigation of these issues, even to the

point that the Attorney General of the United States and Head of the DOJ may have lied under oath to Congress. ABC news and other media organizations report that Speaker of the House Kevin McCarthy is considering an impeachment inquiry of AG Garland over the Hunter Biden Probe. See: https://abcnews.go.com/Politics/mccarthy-considers-impeachment-inquiry-ag-merrick-garland-hunter/story?id=100393665.

33. In Violation of the Due Process and Equal Protection Clauses of the United States Constitution Defendant is being treated differently than other United States Citizens. Defendant is an indigenous First Nation U.S. citizen, part of a minority group that has been historically mistreated by the United States Government. Hunter Biden is a privileged elite Caucasian male, who is part of the ruling political class and is protected by the DOJ and a corrupt system as is demonstrated by the completely disparate treatment of Hunter Biden and Defendant. Upon information and belief Hunter Biden was allowed to appear by Summons in his first appearance, and that summons was sealed from public view. According to several whistleblowers the DOJ deliberately prevented a timely investigation of Hunter Biden's repeated and serious crimes, including violations of FARA, Money Laundering Statutes, Drug Statutes, Gun Statutes and Sex crimes including the Mann Act.

34. Instead, Hunter Biden, has been given a "sweetheart" plea deal, allowing him to plead guilty to two federal misdemeanor counts of failing to pay taxes, and to enter diversion for felony gun charges. The former Director of National Intelligence, John Ratcliffe, called upon the Federal Judge overseeing Hunter Biden's case to reject the plea deal. See: https://www.foxnews.com/media/former-dni-john-ratcliffe-urges-judge-not-accept-hunter-biden-plea-deal.

35. All other serious charges have been ignored or hidden from public view. There is clearly one law that applies to wealthy Caucasian political elites and another law that applies to Native Americans and poor people.

**REMEDIES**

36. To address the repeated failures on the part of the Government to provide Rule 16 discovery, *Brady* and *Giglio* information, appropriate responses to Court approved forensic testing and to remedy the unfair and unequal treatment provided in this case the Defendant Respectfully Moves this Honorable Court for an Order requiring strict compliance with the Government's obligations within fourteen (14) days of the Court's Order.

**PROPOSED ORDER**

37. Defendant respectfully presents the following Proposed Order for the Court's review and Consideration.

WHEREFORE Defendant respectfully prays this Honorable Court for its Order To Compel Fed. R. Crim. Pro. 16. Discovery, timely *Brady,* and *Giglio* Disclosure and for Additional Relief.

Dated this 27th day of June 2023

Respectfully,

/s/ Kimberlee Pitawanakwat

Kimberlee Pitawanakwat
26214 Foster Road
Monroe, OR 97456
kimberlee.pitankwt@gmail.com

cc: Heather Sazama, Assistant United States Attorney, District of South Dakota, via email: Heather.Sazama@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 5:20-CR-50122 |
| Plaintiff | ORDER TO COMPEL FED. R. CRIM. PRO. |
| v. | 16. DISCOVERY, TIMELY BRADY AND |
| | GIGLIO DISCLOSURE AND FOR |
| KIMBERLEE PITAWANAKWAT | ADDITIONAL RELIEF |
| Defendant | |

This Court GRANTS Defendant's Motion to Compel Discovery (Docket No.         ) and Hereby ORDERS the Government to provide the following Fed. R. Crim. Pro. 16. Discovery, *Brady* and *Giglio* disclosures, all Grand Jury information, and the Following additional relief within fourteen (14) days from the date of this ORDER:

1. Complete Electronic Copies of All Fed. R. Crim. Pro. 16. Discovery, including all missing documents, video, and any other materials. The Government will consult with Defendant to remedy any material found to be missing.

2. All *Brady* and *Giglio* disclosures, including all impeachment known to the Government and any relevant information in Puckett's employment file. This includes information about other suspects or other information known to the Government that raises doubt about the Government's case.

3. All information about the use of Informants in this case.

4. All Grand Jury information including transcripts, reports, and other information. This Court finds pursuant to Fed. R. Crim. Pro. 6(E) that this information may be disclosed to Defendant in "connection with a judicial proceeding."

5. The Government is to provide access to the item of evidence that has been authorized for Defense testing and shall be sent to Mr. John Nixon by secure courier service, the costs to be covered by

Page 1 of 2

the Government. The Defendant will serve Mr. Nixon with a copy of this Order which requires Mr. Nixon store the item of evidence in his secure evidence storage locker until such testing is completed at which time it will be returned by secure courier service, the cost to be covered by Mr. John Nixon.

6. This Court finds that Defendant has waived her right to Court Appointed Counsel and is currently Pro Se. As a Pro Se Defendant this Court finds that all of the information included in this Order and all Discovery information may be provided directly to the Defendant as an exception to LR 16.1 and in the Interests of Justice. The Defendant is hereby Ordered not to further disclose this information to anyone not authorized to receive such material. The Defendant is authorized to provide relevant information to Defense Experts or Investigators, who must also be served with a copy of this Order.

IT IS HEREBY ORDERED that the United States Attorney's Office shall comply with this ORDER no later than fourteen (14) days from the following date.

Dated _____, 2023

BY THE COURT:

_____
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE