UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br>v.<br>KIMBERLEE PITAWANAKWAT<br>Defendant | 5:20-CR-50122<br>NOTICE OF APPEAL RE MAGISTRATE<br>MAGISTRATE DUFFY'S DENIAL<br>OF DEFENDANT'S MOTION TO COMPEL<br>DOCKET NO.'s 251 AND 247 TO DISTRICT<br>COURT JUDGE PIERSOL |

# EXHIBIT A

Page 1

```
         IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF OREGON

                    Eugene Division

UNITED STATES OF AMERICA,      )
              Plaintiff,       )
   vs.                         ) No. 6:20-mj-00243
GEORGE DULL KNIFE,             )
                               )
              Defendant.       )
```

         BE IT REMEMBERED THAT on the 30th day of
September, 2020, the above-entitled matter came on for
hearing before the HONORABLE MUSTAFA KASUBHAI, District
Magistrate Judge.

                  DEBORAH COOK, RPR, CSR
                deb@cookcourtreporting.com
                      503-537-0339

              DEBORAH COOK, OFFICIAL COURT REPORTER
                   deb@cookcourtreporting.com

Page 2

A P P E A R A N C E S

For the Government:

        JOSEPH HUYNH
        Asst. US Attorney
        405 E 8th Street, Ste. 2400
        Eugene, Oregon 97401
        541.465.6671
        Joseph.huynh@usdoj.gov

For the Defendant:

        KIMBERLY SEYMOUR
        Federal Public Defenders, Eugene
        859 Willamette Street, #200
        Eugene Oregon 97401
        541.465.6937
        kimberly_seymour@fd.org

Page 3

PROCEEDINGS

Wednesday, September 30, 2020, at 2:01 p.m.

1
2
3
4
5   COURT CLERK:  Now is the time set for magistrate
6   case 20-243, United States of America versus George Dull
7   Knife for detention hearing.
8        THE COURT:  Good afternoon.  Who do I have on
9   behalf of the government today?
10       MR. HUYNH:  Yes, Your Honor, Joseph Huynh on
11  behalf of the United States.
12       THE COURT:  And Ms. Seymour, are you here on
13  behalf of Mr. Dull Knife?
14       MS. SEYMOUR:  Yes, good afternoon, Your Honor.  I
15  am here on behalf of Mr. Dull Knife.
16       THE COURT:  And I understand that an initial
17  appearance has already taken place on Monday and today is
18  set for a detention hearing.
19       Mr. Huynh, are you seeking detention?
20       MR. HUYNH:  Yes, Your Honor.  I have been in
21  contact with the prosecutor in this case in South Dakota,
22  and it is her request that the government seek detention
23  in this case based on risk of flight and danger to the
24  community, and I support that.  That's also the
25  recommendation of Pretrial Services, that he be detained,

1  as well.
2        The facts of this case, the Court may have a copy
3  of the indictment, but so the Court is aware, this case
4  involves a shooting of a vehicle.  The defendant is the
5  alleged shooter who fired at a vehicle that had two
6  occupants in it, who went to his home.
7        He apparently followed them in the car, shot at
8  them, and then pushed the car off the top of a hill and
9  continued to fire at them.  He fired 15 shots into the
10 vehicle, knocking out the back window, and surprisingly
11 only injuring one individual in the hand, who got shot.
12       But given the nature of that crime and the
13 charges for which there's a presumption under 924 C, we
14 do believe he's a danger to the community.
15       Additionally, he appears to have fled within a
16 couple days of the incident, and after having been spoken
17 to buy law enforcement.  And came out here with a
18 co-defendant, which appears to be an attempt to elude
19 potential arrest.
20       So given that, Your Honor, we believe detention
21 is warranted.
22       THE COURT:  Ms. Seymour.
23       MS. SEYMOUR:  Thank you, Your Honor.  Your Honor,
24 this is a removal case.  And Mr. Dull Knife is prepared
25 and willing to return to South Dakota to appear in Court

1 at his next hearing.
2       And very significantly, since learning of his
3 arrest, his two sisters have driven from South Dakota to
4 Oregon. They are here in the area now and they are
5 willing, if he's released, to pick him up and transport
6 him directly back to South Dakota. They drove here
7 without making any stops and would return to South Dakota
8 doing the same, going directly back, not making any
9 stops.
10       And furthermore, his sister Tera, his older
11 sister, who I believe is on the line, she has discussed
12 with me what it would look like if the Court were to
13 appoint her as a third-party custodian. And if she were
14 required to report to Pretrial Services if there were any
15 problems between Oregon and South Dakota, and from now
16 until his next Court date.
17       And she understands that in that role she'd have
18 the responsibility of reporting to the Court and doing
19 that promptly, even if it means that Mr. Dull Knife would
20 face consequences or get in trouble. She is ready and
21 willing to accept that responsibility, and be candid with
22 the Court.
23       Mr. Dull Knife is the father of a four-month-old
24 child, and has also been actively involved in raising his
25 partner's other children. He and his partner, who is the

1  co-defendant, came to Oregon several weeks ago, and have
2  been living with his partner's family here.  His
3  partner's mother is in poor health.  She suffers from
4  dementia, and she needed some additional assistance from
5  the family to help her manage these health conditions.
6          So to give the Court some context as to why
7  Mr. Dull Knife had relocated from South Dakota to Oregon,
8  his mother-in-law's condition was a significant
9  motivating factor.  And the reason why their family came
10 out this way, and that's where they have been staying,
11 not hiding, not under the cover of night, but living as a
12 family to help his mother-in-law.
13         THE COURT:  Were the children with them?
14         MS. SEYMOUR:  Yes.  Yes.  The children are living
15 with them in Oregon.
16         Furthermore, we would propose that in addition to
17 Mr. Dull Knife's sister driving him back to South Dakota,
18 that once there, and prior to his next Court date, he
19 reside with his mother, Cora.  His mother is the mayor of
20 a small town called Wanblee.  This is on the Pine Ridge
21 Reservation.
22         There are only adults living in the home; she
23 lives there, her sister and another adult child.  There
24 are no firearms in the home.  They are a very traditional
25 family with no time for drugs or alcohol, and so she does

1    not permit any drug or alcohol use in the home, either.
2                So this would be a very safe and stable place for
3    Mr. Dull Knife to reside upon his return to South Dakota.
4    And she, his mother, is also equipped to doing everything
5    she can to make sure that he attends his Court date when
6    required upon his return.
7                Mr. Dull Knife has a very positive work history,
8    and among his most recent jobs he was working security at
9    the Reservation.  And because of Covid, they have
10   checkpoints and other stops while the Reservation is on
11   lockdown, so he was trusted to work the checkpoints and
12   ensure the safety of his community by screening
13   individuals coming to or leaving the Reservation, about
14   whether they were exhibiting any symptoms.
15               He is also valued in the community for his work
16   cutting wood and providing lumber to individuals in the
17   community.  Mr. Dull Knife is from probably one of the
18   poorest communities in the United States, very, very
19   poor, very high suicide rates, very high rate of drug use
20   and abuse and addiction.  But he has done positive and
21   productive things there to support his community.
22               His family, especially his mother, is a leader in
23   the community, and we believe that her home would be a
24   very appropriate place for him to reside on the strictest
25   conditions available, on a condition of home confinement.

1  And with his sisters, who drove immediately and
2  throughout the night to Oregon in order to be available
3  to transport him, and their willingness to report to the
4  Court if there's any problems with Mr. Dull Knife getting
5  back to South Dakota according to the Court's conditions.
6           I think the Court can be assured that he would
7  make it to his next Court date, and that with these
8  conditions in place he would not pose a danger to the
9  community.
10          THE COURT:  Officer Stranieri, a question.  The
11 report involving the co-defendant had recommended
12 release.  Was there a difference in your understanding of
13 the nature of the co-defendant's conduct during the
14 commission of the alleged offenses, or was there
15 something else that suggested to you that there would be
16 a combination -- conditions or combinations of conditions
17 that would warrant the release of Mr. Dull Knife's
18 co-defendant?
19          PROBATION OFFICER:  Yes.  Thank you, Your Honor.
20          Mr. Dull Knife's co-defendant is not charged with
21 the weapons or the attempted assault.  She's charged with
22 accessory after the fact and false statements.
23          THE COURT:  Okay.  All right.  Mr. Sweet, any
24 additional context that you would like to provide to me
25 to help me understand the distinction between the two?

Page 9

1  MR. HUYNH: Yes. It's Mr. Huynh. I apologize, I
2  didn't announce myself.
3  But a couple of things, both context for the
4  individual involved for the offense, Mr. Stranieri is
5  correct that -- or Officer Stranieri is correct that the
6  defendant, Mr. Dull Knife, is charged with the 924
7  discharge, as well as the assault with the intent to
8  commit murder and assault with dangerous weapon, which
9  his co-defendant, who I believe is his girlfriend, is
10 not.
11 And there is also a significant distinction, I
12 think you will hear, although the government will be
13 requesting detention as well. But she has a
14 four-month-old child that she is also nursing, so I think
15 that's a significant distinction between the two of them,
16 both in terms of their situation and the role in the
17 offense.
18 But with respect to the context, we heard a lot
19 about Mr. Dull Knife's family and support. But just so
20 Your Honor is -- based on what I understand, this is not
21 a case where there was a bunch of arguments, crossfire,
22 there was a heated debate.
23 My understanding is the victims went to Mr. Dull
24 Knife's house to pick up a child, and the mother of that
25 child, the victim was with his mother in the vehicle.

Page 10

1  They left because they were told that the person, the
2  mother of the child, was not ready to leave and to come
3  back in an hour, which they were doing.
4      Then the defendant, in another vehicle, he was
5  not in the house at the time, chased them in his vehicle
6  and fired many rounds.  As they got close to the highway,
7  he pushed them up into another location to fire even more
8  rounds.
9      The mother, who was in the vehicle, talks
10  about -- and she's the one who had her hand shot, Your
11  Honor.  She talks about a bullet whizzing by her head.
12  Nothing that the defense counsel has said about his ties,
13  about how he's perceived in the community changes the
14  fact that but for the grace of God, he could be facing
15  not just assault with the intent to commit murder, but
16  two counts of murder, Your Honor.  And this callous and
17  wanton, and this is not someone who should get the
18  benefit of the doubt from this Court.
19      And I know that if he gets to South Dakota, they
20  are going to be looking for detention, as well, to
21  revisit it, which I understand from that Court out there.
22      But just to be clear, Your Honor, that's how we
23  see them as distinct in their roles, and what we think of
24  this individual and why he should be detained.
25      Thank you, Your Honor.

1  THE COURT:  Ms. Seymour, anything else?
2  MS. SEYMOUR:  Your Honor, I would add that there
3  is nothing from Mr. Dull Knife's history suggesting that
4  he's a violent person.  I see no significant criminal
5  history at all.  And while Mr. Huynh points out or argues
6  that Mr. Dull Knife should not get the benefit of the
7  doubt, he does have the benefit of a presumption of
8  innocence.
9  And I believe that we have a very one-sided
10 picture of what the alleged events are.  And I think the
11 weight of the evidence, as other Courts have noted, is
12 the least important factor in determining whether release
13 is appropriate.
14 THE COURT:  Thank you, Ms. Seymour.
15 And I have no quarrel with the law, and I
16 appreciate that you point that out.  It is a statute that
17 I need to comply with.  And yes, the offense itself is
18 the least of the considerations.
19 But it can oftentimes be modulating or moderated
20 by the virtue of the nature of the offense itself.  And
21 there is alleged a significant amount of violent behavior
22 in this instance that gives me a good deal of pause
23 for -- but whether there can be conditions that would
24 ensure the safety of the community going forward.
25 Further, based on the fact that he will be going

1    back to South Dakota for further prosecution of this
2    case, I will frankly leave it to the District Court in
3    South Dakota to determine whether it may find that there
4    are conditions or combination of conditions that would
5    ensure the safety of the community or eliminate the
6    concern for flight.
7              Based on the information I have in front of me, I
8    am not convinced that there are those conditions present
9    to ensure his safe return to South Dakota if I were to
10   release him today.  And for that matter, also the
11   overriding concern that I have about the safety of the
12   community.
13             I will order detention without prejudice so that
14   the matter can be considered again with new information
15   once Mr. Dull Knife returns to South Dakota.
16             Anything else that we need to address with this
17   case, Mr. Huynh?
18             MR. HUYNH:  No, Your Honor.  I believe the
19   defense has already waived all the other proceeding
20   matters in this case.
21             THE COURT:  Anything else, Ms. Seymour?
22             MS. SEYMOUR:  Nothing further, Your Honor.  Thank
23   you, Judge.
24             THE COURT:  Thank you.
25        ///

```
            (Proceedings concluded at
                 2:16 p.m.)
```

STATE OF OREGON  )
                 )ss
COUNTY OF YAMHILL)


       I, Deborah L. Cook, RPR, Certified Shorthand Reporter in and for the State of Oregon, hereby certify that at said time and place I reported in stenotype all testimony adduced and other oral proceedings had in the foregoing hearing; that thereafter my notes were transcribed by computer-aided transcription by me personally; and that the foregoing transcript contains a full, true and correct record of such testimony adduced and other oral proceedings had, and of the whole thereof.

       Witness my hand and seal at Dundee, Oregon, this 25th day of February, 2021.


/s/ Deborah L. Cook, RPR, CSR

_____
DEBORAH L. COOK, RPR
Certified Shorthand Reporter
OREGON CSR #04-0389
CALIFORNIA CSR #12886
WASHINGTON CSR #2992