UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>KIMBERLEE PITAWANAKWAT<br><br>Defendant | 5:20-CR-50122<br><br>DEFENDANT'S MOTION TO DISMISS<br><br>AND FOR ALTERNATIVE RELIEF<br><br>REPLY TO GOVERNMENT'S<br><br>MEMORANDUM IN OPPOSITION<br><br>DOCKET NO'S 238 AND 255 |

Kimberlee Pitawanakwat
26214 Foster Road
Monroe, OR 97456
kimberlee.pitankwt@gmail.com

The Honorable Lawrence L. Piersol
United States District Judge
Rm 202 United States Courthouse
400 S. Phillips Avenue
Sioux Falls, SD 57104

I, Kimberlee Pitawanakwat, the Defendant in the above captioned case, respectfully moves this Honorable Court for Dismissal of the Pending Indictment and For Alternative Relief. This Reply Responds to the Government's Memorandum in Opposition and should be granted for the following reasons:

**PROCEDURAL POSTURE**

1. The Government is incorrect in its summary of the procedural posture of this case. The Government's conflates litigation of related and unrelated issues and misunderstands how they relate to this Motion to Dismiss, the Defendant's first Motion to Dismiss as a Pro Se litigant.

2. The Government's repeated misstatements and fabrications about the record of this case are quite apparent from careful review. The clear record of ineffective assistance of counsel has already

been made and caused the recusal of two previous Judges assigned to this case. See Docket No.'s 221, 236 (styled as a re-assignment without any explanation of its basis, and which was clearly another recusal, See Docket No. 237 where the Defendant provides a clear history of this issue).

3. Defendant's Motion for Severance was never litigated and was not denied, as AUSA Sazama is well aware, since she was secretly negotiating a plea agreement with the former co-defendant which rendered Defendant's Motion moot.

4. Defendant has filed two Motions to Compel, which are both still pending and upon appeal to this Honorable Court. Neither have been fully litigated and the many issues, including issues of Prosecutorial misconduct, are all still pending. See Docket No. 254. In that pleading Defendant first became aware of and raised an additional extremely serious Government misconduct issue that has yet to be addressed – that of the forgery of an official Government document, a false warrant return purporting to show that this Defendant was arrested in Rapid City, South Dakota.

5. These continuing deceptions and misrepresentations about this case involve repeated Prosecutorial misconduct and a deliberate deception of this court.

6. The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), quoting *Giglio v. United States*, 405 U.S. 150, 153 (1972). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

**THE GOVERNMENT FAILED TO ESTABLISH FEDERAL JURISDICTION IN THIS CASE AND IS USING THE GRAND JURY SECRECY RULES TO HIDE MISCONDUCT**

7. The Government presents a distorted version of the legal disputes and pretends that they are factual disputes. It does so in order to falsely claim these are merely factual disputes when it knows well that they relate to other foundational legal issues, such as Jurisdiction, Misconduct, Treaty Rights and Required Elements of Charged Offenses.

8. It is clearly established law, for example, that a case may be dismissed due to misconduct in the Grand Jury, see: *U.S. v. Chanen, 549 F.2d 1306* (9th Cir. 1977). In *Chanen* the Court provided a summary of some of the situations where federal courts have dismissed indictments:

    "On occasion, and in widely-varying factual contexts, federal courts have dismissed indictments because of the way in which the prosecution sought and secured the charges from the grand jury. See, e. g., *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972); *United States v. Wells*, 163 F. 313 (D.Idaho 1908); *United States v. DeMarco*, 401 F.Supp. 505 (C.D.Cal.1975), appeal docketed, No. 75-3824, 9th Cir. Dec. 29, 1975; *United States v. Gallo*, 394 F.Supp. 310 (D.Conn.1975). These dismissals have been based either on constitutional grounds or on the court's inherent supervisory powers. See generally *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974); id. at 793 (Hufstedler, J., concurring); *United States v. Estepa*, supra, 471 F.2d 1132. 2 Whatever the basis of the dismissal, however, the courts' goal has been the same, "to protect the integrity of the judicial process," *United States v. Leibowitz*, 420 F.2d 39, 42 (2d Cir. 1969), particularly the functions of the grand jury, from unfair or improper prosecutorial conduct. *U.S. v. Chanen*, 549 F.2d 1306 (9th Cir. 1977)."

9. This prosecutor has already made clear and direct misrepresentations regarding the existing evidence in this case, see Docket No. 254. Given this record of misconduct it is a violation of the Defendant's Due Process and *Brady* rights to allow the Government to rely upon Grand Jury secrecy rules, which were established to protect the Defendant. At minimum, this Court should review the Grand Jury record of this case and determine whether there has been misconduct and if so that requires immediate disclosure, rather than waiting until the time of trial to disclose this information. This will cause more delay and further harm to the Defendant and further waste of Government resources prosecuting a case that should never have been brought.

10. The Government also presents the position that factual issues cannot be litigated pretrial and be dispositive in relation to Motions to Dismiss. This position is clearly legally wrong. For example,

a Motion to Suppress can result in suppression of evidence is a mixed issue of law and fact. Granted Motions to Suppress result in exclusion of evidence and often cause dismissal. Additionally, the Government cites Federal Rule of Criminal Procedure 12(b)(1): "(1) In General. A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits…," misunderstanding that each and every argument made in Defendant's Docket No. 238 complies with this rule and can be litigated without trial.

11. Similarly, the Government fails to review the rest of Federal Rule of Criminal Procedure 12, which goes on to state at (2) that "*Motions That May Be Made at Any Time. A motion that the court lacks jurisdiction may be made at any time while the case is pending.*" Thus, issues relating to jurisdiction may be made at any time prior to trial. The Defendant has already raised several issues relating to 18 U.S.C. 1153, and lack of Major Crimes Act jurisdiction which likely reveal that the Government presented false testimony to the Grand Jury in this case.

**THE INDICTMENT IN THIS CASE CONTAINS CLEAR MATERIAL ERRORS**

12. The Defendant is charged in Count IV and V of the Indictment, Count IV alleges a violation of 18 U.S.C. 1001(a)(2). This Count fails to assert any specific jurisdiction pursuant to 18 U.S.C. 1153 but also makes factual assertions that the Government now acknowledges are lies and must have been known to have been lies at the time they were presented to the Grand Jury.

13. Count IV alleges:

> "the defendant, Kimberlee "Stormy" Pitawanakwat, reported to Oglala Sioux Tribe Department of Public Safety Criminal Investigator Derek Puckett that George Dull Knife had not been present at his residence at all on August 5, 2020 and that no shooting had occurred on the property, when she then and there well knew that George Dull Knife was present on the property on August 5, 2020 and used a firearm on that date to shoot into the vehicle occupied by K.T. Burgee and Carmen Burgee…"

14. The Government now admits that this is false. See Defendants Supplemental Motion to Dismiss, Docket No. 253, paragraph 4:

> "The Government now concedes that this alleged false statement does not relate in any way whatsoever to the shooting of alleged victim Carmen Burgee. The Government, in its Response to Defendant's Motion to Compel, Docket No. 248, at page 5 states: "The defendant is not alleged to have been involved in any way in George Dull Knife's shooting of Carmen Burgee and her vehicle on August 5, 2020.""

15. The Government also knows that the shooting did not take place on the Dull Knife property, or certainly not in proximity to the Defendant, Docket No. 253, paragraph 6:

> "On Wednesday, September 30, 2020, the Government appeared at a pretrial hearing in 6:20-mj-00243-MK. Document 14 of that record is a reporter's transcript of a hearing before Magistrate Judge Mustafa Kasubhai (See Docket No. 252-1, Defendants Exhibit A at page 9 and 10). The following exchange takes place with the Court: AUSA Huynh: "My understanding is the victims went to Mr. Dull Knife's house to pickup a child, and the mother of that child, the victim was with his mother in the vehicle. They left because they were told that the person, the mother of the child, was not ready to leave and to come back in an hour, which they were doing. Then the defendant, in another vehicle, he was not in the house at the time, chased them in his vehicle and fired many rounds. As they got close to the highway, he pushed them up into another location to fire even more rounds.""

**PRIMA FACIE EVIDENCE OF GRAND JURY MISCONDUCT**

16. These admissions by the Government that it falsely charged Defendant in Count IV raise significant and troubling questions about what evidence it presented to the Grand Jury in this case, raise issues of Grand Jury misconduct that can result in dismissal and require further discovery, See paragraph 8 above.

17. This Court should also Order the Government to provide a Bill of Particulars requiring the Government to specify the specific facts that it alleges and is required to prove in order to establish, beyond a reasonable doubt, that the Defendant is guilty of Count IV and V, since the facts it erroneously presented in the Indictment and to the Grand Jury are wholly contradicted by the Government's current statements.

18. The Defendant asserts that the Government knowingly presented the statement of Ian Dull Knife to the Grand Jury, presumably via testimony from corrupt former CI Puckett. That deliberate false testimony would have been a summary from Puckett of Ian Dull Knife's false jailhouse statement that he saw the co-defendant shoot at the Burgee vehicle with an AR15 rifle and then hand the rifle to the Defendant. The Government knew that this testimony must have been false because a cursory examination of the spent bullet shows that it came from a pistol and not a rifle. This Court has consistently refused to compel the testing necessary to establish the truth and appears to be deliberately protecting a corrupt prosecutor and a corrupt former criminal investigator.

**PRETRIAL MOTIONS TO DISMISS ARE APPROPRIATE PURSUANT TO RULE 12(3)**

19. The Government also fails to recognize or respect Federal Rule of Criminal Procedure 12(3), which recognizes that the following motions MUST be made before trial: (i) improper venue; (ii) preindictment delay; (iii) a violation of the constitutional right to a speedy trial; (iv) selective or vindictive prosecution; and (v) an error in the grand-jury proceeding or preliminary hearing; (B) a defect in the indictment or information; including; (i) joining two or more offenses in the same count (duplicity); (ii) charging the same offense in more than one count (multiplicity); (iii) lack of specificity; (iv) improper joinder; and (v) failure to state an offense; (C) suppression of evidence; (D) severance of charges or defendants under Rule 14; and (E) discovery under Rule 16.

20. It is clear from Rule 12 that Defendants Motions have been appropriate and are applicable to the precise situation at issue in this case.

21. The Defendant has made a prima facie case of misconduct in the Grand Jury process, see Paragraph 11 above and Docket No. 253. Where a Defendant has made a prima facie case of misconduct then the Court must order disclosure of the Grand Jury proceedings pursuant to *Brady* and the Due Process Protections Act, which requires "timely" production of *Brady* information. The Grand Jury in this case returned an Indictment sometime around September 17, 2020, but the Indictment itself lacks a date, another error.

22. The Government identifies cases that support the proposition that misstatements to the Grand Jury must be material, as is clearly the case here. The Grand Jury returned an indictment alleging that the Defendant was both directly aware of the shooting and that George Dull Knife was on the property, and the Government now concedes that this was false and is clearly material to Count IV. If the Government were allowed to present such a charging document to the jury in this case it would allow deliberate false statements to be presented to the jury, which is clearly material.

**THE GOVERNMENT LACKS FEDERAL JURISDICTION IN THIS CASE**

23. At page 5 of the Governments Opposition AUSA Sazama admits for the first time in this case that the Government has no Jurisdiction pursuant to the Major Crimes Act, 18 U.S.C. § 1153 and now asserts Jurisdiction pursuant to the General Crimes Act, but fails to provide its Statutory Citation, which is 18 U.S.C. § 1152. The Government correctly cites the following general jurisdiction provision of § 1152 but then ignores the following section of the statute: "This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively," which precludes exactly this case.

24. The Federal Government must establish jurisdiction, either subject matter (Major Crimes Act violations – which are not alleged here), or in personam jurisdiction. The burden of establishing jurisdiction falls on the Government. The Defendant was living with George Dull Knife, a member of the Oglala Sioux tribe by birth, as common law husband and wife, and had a child

with George Dull Knife, who was also member of the Oglala Sioux tribe by birth. As the Government is also aware, two of Defendant's children were enrolled in the Lakota Waldorf school within the Pine Ridge Reservation. Additionally, the Government falsely says that the Defendant claimed to be an enrolled tribal member, which is not true. The Defendant truthfully told Puckett that Defendant is affiliated with the Siletz tribe of Oregon.

25. As the Supreme Court made clear in *Keeble v. United States* 8212 5323, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), the tribe has exclusive jurisdiction over non-Major Crimes act crimes:

> "As the opinion of the Court demonstrates, the Major Crimes Act, 18 U.S.C. §§ 1153, 3242, was enacted in response to this Court's decision in Ex parte Crow Dog, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030. The Act conferred jurisdiction upon federal district courts over certain enumerated crimes committed by Indians on an Indian reservation, leaving tribal jurisdiction intact as to all other crimes." Highlighting added.

26. The court continued:

> "It is a commonplace that federal courts are courts of limited jurisdiction, and that there are no common-law offenses against the United States. 'The legislative authority of the Union must first make an act a crime, affix a punishment to it, and declare the Court that shall have jurisdiction of the offence.' United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259. 'It is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute unless clearly within its terms.'..." Highlighting added.

27. It is the Government's burden to establish jurisdiction over this Defendant, which it has consistently failed to do. The Government mistakenly asserts that the "defendant's race is not an element of proof at trial," failing to understand that in order to establish any arguable jurisdiction the Government must establish that the Defendant is not an "Indian" as that is defined. The matter

of jurisdiction is a matter that "may be made at any time", as clearly established by Federal Rule of Criminal Procedure 12(2). The Government must establish such in order to have jurisdiction, not as a matter of fact at trial. The Government's argument, taken at face value would mean that any person in any state could be charged with a violation of 18 U.S.C. § 1001 regardless of jurisdiction, which is absolutely inconsistent with the entire fabric of U.S. jurisprudence establishing federal courts as courts of limited jurisdiction, see *Keeble* above.

## A "FEDERAL GOVERNMENT AGENCY" IS REQUIRED BY 18 U.S.C. § 1001 AND ANY ALLEGED FALSE STATEMENT MUST BE MATERIAL AND IS AN ELEMENT OF THE OFFENSE

28. The Government also mistakenly asserts that it is not required to prove that corrupt former CI Puckett was a federal agent, which is inconsistent with the Eighth Circuit Model Jury Instructions, and consistent case law, which indicate the following, see: https://www.ca8.uscourts.gov/sites/ca8/files/2021%20Edition-Criminal%20Jury%20Instructions.pdf, at page 292:

### 6.18.1001A CONCEALING A MATERIAL FACT FROM A GOVERNMENTAL AGENCY (18 U.S.C. § 1001(A)(1))

It is a crime to [falsify] [conceal] [cover up] a material fact from a federal governmental agency.[1] This crime, as charged in [Count _____ ] of the Indictment, has four elements:

*One*, the defendant knowingly and intentionally [falsified] [concealed] (describe material fact falsified or concealed) as charged;[2]

*Two*, the defendant did so by use of a [trick] [scheme] [device], that is, a course of action intended to deceive others;[3]

*Three*, the fact was material to the (name of federal agency);[4] and

*Four*, the material fact was about a matter within the jurisdiction of (name of federal agency).[5] You may find that this element has been satisfied if you find that the (name of federal agency)'s function includes (describe evidence adduced to show agency jurisdiction, e.g., "reviewing lending practices of XYZ Association").

A "material fact" is a fact that would naturally influence or is capable of influencing a decision of the agency. Whether a [statement] [representation] is "material" does not depend on whether the agency was actually deceived or misled.[6]

29. The instruction makes clear that the Government must prove both that Defendant lied to a "federal government agency" and also that it was material. Materiality is a separate element of the offense. The False Statements Accountability Act of 1996, Pub. L. 104-292, HR 3166 (Oct. 11, 1996), amended § 1001 to explicitly include all three branches of the federal government, effectively overruling *Hubbard*. However, the majority of cases brought under this statute deal with false statements to a government agency, generally within the executive branch.

30. The Government also ignores the issue of materiality of any alleged false statement, a required element of 18 U.S.C. § 1001, since it now admits that the Defendant was not involved in any way with former co-defendant's conduct. The Government should be required to explain to this Court what the supposed false statement that Defendant made and how it is material to this case, given the Government's admission that the Defendant was not involved. The Government's assertion that it would have charged Defendant under the Major Crimes Act given additional evidence of

her Indian heritage is patently absurd given the Government's admission that the Defendant had nothing to do with the actual crime involved in this case.

**TREATY LAW IS THE SUPREME LAW OF THE LAND PURSUANT TO ARTICLE VI OF THE UNITED STATES CONSTITUTION**

31. AUSA Sazama appears to be unfamiliar with Article VI of the United States Constitution, which provides as follows in relation to Treaty Law:

    "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

32. The United States Government entered into 30 Treaties with the Great Sioux Nation between 1815 and 1868, See United States National Archives: https://www.archives.gov/research/native-americans/treaties/catalog-links?_ga=2.200925550.1921282160.1691608874-1738654846.1691608874

33. In an ignominious attempt to divest Native Americans of their Treaty Rights, Congress passed the Indian Appropriations Act of 1871, but even that statute provided the following:

    "but no obligation of any treaty lawfully made and ratified with any such Indian nation or tribe prior to March 3, 1871, shall be hereby invalidated or impaired. Such treaties, and any Executive orders and Acts of Congress under which the rights of any Indian tribe to fish are secured, shall be construed to prohibit (in addition to any other prohibition) the imposition under any law of a State or political subdivision thereof of any tax on any income derived from the exercise of rights to fish secured by such treaty, Executive order, or Act of Congress if section 7873 of title 26 does not permit a like Federal tax to be imposed on such income."

34. This makes clear the United States Constitution establishes Treaty Law as the "Supreme Law of the Land," binding the Judges in "every state" and that efforts to undermine these Treaties pursuant to the Indian Appropriations Act failed on their face because the thirty treaties with the Great Sioux Nation were lawfully made and ratified prior to 1871. This clearly establishes that the arguments the Defendant raised pursuant to Treaty Law are valid and all later inconsistent federal statutes that conflict with any prior Treaty provision are therefore facially invalid and unconstitutional violations of Article VI.

35. The United States Constitution is the Supreme law of the United States of America. Article VI of the United States Constitution clearly establishes Treaty Law, including all thirty Sioux Nation Treaties as the law of this land that must be upheld by the Judges of every state. The law is clear in this regard, and any federal statute that conflicts with Article VI and the thirty Sioux Nations Treaties is Unconstitutional.

The Defendant Moves this Honorable Court to Dismiss this Indictment and For Alternative Relief Consistent with this Motion and Docket No. 253.

Dated this 9th day of August 2023

Respectfully,

/s/ Kimberlee Pitawanakwat

Kimberlee Pitawanakwat
26214 Foster Road
Monroe, OR 97456
kimberlee.pitankwt@gmail.com